# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

LEKESHA BOLTON, *individually*
*and as Mother and Next Friend of C.B,*
*a Minor, and* C.B., *a Minor*                                    **PLAINTIFFS**


v.                                         **Civil Action No. 1:10-cv-297-HSO-JMR**


CITY OF GULFPORT, *by and through*
*its Mayor George Schloegel, and*
GULFPORT POLICE DEPARTMENT, *Chief*
*of Police Allen Weatherford, in his official*
*capacity, and* W.J. RIDDLE, *Officer, acting*
*under color of state law, and*
ANTHONY P. CLARITE, *Officer, acting under*
*color of state law, and* J. WUEST, *Officer,*
*acting under color of state law*                                **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS'
MOTION TO STRIKE OR LIMIT THE AFFIDAVIT OF OFFICER CLARITE;
DENYING IN PART ON THE MERITS AND IN PART AS MOOT,
DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' UNTIMELY EXHIBITS;
DENYING DEFENDANTS' MOTION TO STRIKE THE AFFIDAVIT OF
LEKESHA BOLTON; DENYING PLAINTIFFS' MOTION TO AMEND THEIR
COMPLAINT; DENYING AS MOOT DEFENDANTS' MOTION, ENTITLED
"PRELIMINARY RESPONSE TO PLAINTIFF'S MOTION TO AMEND
COMPLAINT, OR ALTERNATIVELY, MOTION TO STAY AND/OR ABATE
BRIEFING ON PLAINTIFFS' MOTION TO AMEND COMPLAINT,
PENDING ADJUDICATION OF THE PENDING MOTION FOR SUMMARY
JUDGMENT AND/OR FOR OTHER RELIEF"; AND GRANTING IN PART
AND DENYING IN PART DEFENDANTS' MOTION FOR QUALIFIED
IMMUNITY AND TO DISMISS PURSUANT TO FED. R. CIV. P. 56 OR
OTHER GROUNDS**

Before the Court are six motions: (1) the Motion [40] to Assert Qualified

Immunity and to Dismiss Pursuant to FED. R. CIV. P. 56 or Other Grounds, filed by

Defendant officers of the Gulfport Police Department, Anthony Clarite, W.J. Riddle,

and J. Wuest ("Defendants"); (2) Plaintiffs' Motion [63] to Strike or Limit the Affidavit of Officer Clarite; (3) Defendants' Motion [79] to Strike Plaintiffs' Untimely Exhibits submitted in support of Plaintiffs' Response to Defendants' Motion for Qualified Immunity and to Dismiss; (4) Defendants' Motion [80] to Strike the Affidavit of Lekesha Bolton; (5) Plaintiffs' Motion [67] to Amend their Complaint; and (6) Defendants' Motion [76] entitled, "Preliminary Response to Plaintiff's Motion to Amend Complaint, or Alternatively, Motion to Stay and/or Abate Briefing on Plaintiff's Motion to Amend Complaint Pending Adjudication of the Pending Motion for Summary Judgment and/or for Other Relief."

The Court has reviewed the parties' submissions and accompanying exhibits in their entirety, and the relevant legal authorities. For the reasons set forth below, Plaintiffs' Motion [63] to Strike or Limit the Affidavit of Officer Clarite should be denied. Defendants' Motion [79] to Strike Plaintiffs' Untimely Exhibits should be denied, in part on the merits and in part as moot. Defendants' Motion [80] to Strike the Affidavit of Lekesha Bolton should be denied. Plaintiffs' Motion [67] to Amend their Complaint should be denied, and Defendants' Motion entitled, "Preliminary Response to Plaintiff's Motion to Amend Complaint, or Alternatively, Motion to Stay and/or Abate Briefing on Plaintiff's Motion to Amend Complaint Pending Adjudication of the Pending Motion for Summary Judgment and/or for Other Relief," should be denied as moot. Defendants' Motion [40] for Qualified Immunity and to Dismiss should be granted in part and denied in part. All 28 U.S.C. § 1983 claims alleged by Plaintiff Lekesha Bolton against the individual Defendants

should be dismissed with prejudice.   Ms. Bolton's § 1983 claims are barred by *Heck v. Humphrey,* 512 U.S. 477 (1994), and the individual Defendants are immune from these claims based upon qualified immunity.   Plaintiff C.B.'s § 1983 claim alleging that Defendants seized her unlawfully and without probable cause should be dismissed.   C.B.'s § 1983 excessive force claim against Officer Riddle arising from her tasing should also be dismissed.   C.B.'s remaining § 1983 claim, alleging excessive force by Officer Wuest following her tasing, should not be dismissed. Defendants' Motion [40] for Qualified Immunity and to Dismiss should be denied in this respect.   Defendants' Motion [40] does not address either Plaintiffs' state law claims for assault and battery and intentional infliction of emotional distress.   It also does not address Plaintiffs' claims against the City of Gulfport, the Gulfport Police Department, and Chief of Police Allen Weatherford, in his official capacity ("Municipal Defendants").   Accordingly, in addition to C.B.'s excessive force claim against Officer Wuest, Plaintiffs' state law claims, and their claims against Municipal Defendants, will proceed.

## I.  BACKGROUND

### A.    Factual Background

This case arises from events surrounding the March 24, 2009, arrests of Plaintiffs Lekesha Bolton and her then sixteen-year-old daughter, Plaintiff C.B., in Gulfport, Mississippi, by officers employed by the Gulfport Police Department.   Ms. Bolton was charged with, and subsequently convicted of, attempting to intimidate, impede, obstruct, or resist a city officer in the discharge of his duties, in violation of

GULFPORT, MISS., CODE OF ORDINANCES § 7-7, and obstructing or resisting lawful arrest, in violation of MISS. CODE ANN. § 97-9-73. Judgments [40-2], Ex. B to Defs.' Motion [40] to Assert Qualified Immunity and to Dismiss. Ms. Bolton was also charged with contributing to the delinquency of a minor, in violation of MISS. CODE ANN. § 97-5-39, for allegedly allowing a sixteen year old boy to stay at her home during school hours. She was not convicted on this charge. Affs. of Anthony Clarite [40-6], Ex. 1 to Ex. F to Defs.' Mot. [40] to Assert Qualified Immunity and to Dismiss. Ms. Bolton appealed her convictions to the County Court of Harrison County, Mississippi, but the appeal was dismissed on August 22, 2011, upon her counsel's motion, after she did not appear for trial. Amended Writ of Procedendo, Ex. D [40-4] to Defs.' Mot. [40] to Assert Qualified Immunity and to Dismiss. Her convictions are therefore final. C.B. was also arrested on March 24, 2009, but the Court has not been supplied with any evidence as to the charges brought against C.B. or their disposition.[1] The circumstances leading up to, encompassing, and following Plaintiffs' arrests are drawn from the undisputed facts, along with relevant disputed material facts construed in the light most favorable to Plaintiffs.

---

[1]Defendants' counsel represents that C.B. was arrested for (1) aggravated assault; (2) intimidating, impeding, obstructing, or resisting an officer in the discharge of his duties; and (3) resisting arrest. Defs.' Mot. [40] to Assert Qualified Immunity and to Dismiss at pp. 6-7 n.4. He believes that these charges were deferred to the Harrison County Youth Court and passed to the file or dismissed because Defendants were not given proper notice of the trial and therefore were not present. *Id.* Counsel explains that he did not submit the Youth Court records related to C.B.'s charges because those records are confidential. *Id.* C.B.'s counsel also represents that C.B. was not convicted of the charges lodged against her. Pls.' Resp. [62] to Defendants' Motion for Qualified Immunity and to Dismiss at p. 12.

*Scott v. Harris,* 550 U.S. 372, 377 (2007).

On March 24, 2009, a mother filed a criminal complaint with the Gulfport Police Department against her juvenile son, alleging that he stole $250.00 and pain medication from her, before fleeing their residence. Aff. of Mark Clarite [40-6] at pp. 2-3, Ex. F to Defs.' Mot. [40] to Assert Qualified Immunity and to Dismiss. The mother apparently advised Officer Anthony Clarite that her son had recently begun to skip school. *Id.* at p. 3. She provided Officer Clarite with a picture of her son, and directed him to the area where she suspected he was located. *Id.* Officer Clarite patrolled this area and located the juvenile on Plaintiffs' porch, along with several other individuals. *Id.* He arrested the juvenile for petit larceny and placed him in his police vehicle. *Id.* at pp. 3-4.[2] He then attempted to question the remaining individuals on the porch. *Id.* According to Officer Clarite, he was seeking to investigate their knowledge of the alleged theft and to discern who had permitted the juvenile to remain on the property during school hours. *Id.* In his December 16, 2011, Affidavit, Officer Clarite contends that he arrived at Plaintiffs' home at about 3:00 p.m. *Id.* at p. 2. In the Narrative that he completed on the day of the incident, he indicated that he arrested the juvenile at "approximately 1542 hours." Narrative of Officer Clarite [63-2], Ex. B to Pls' Mot. [63] to Strike Aff. of Officer Clarite. Ms. Bolton maintains that Officer Clarite arrived at her residence at approximately 3:45 p.m. after school was dismissed. Dep. of Lekesha Bolton [68-1]

---

[2]Plaintiffs do not deny that the juvenile was arrested or contest the version of events leading up to his arrest, but they argue that these facts are irrelevant. Mot. [63] to Strike or Limit the Aff. of Officer Clarite at p. 2.

at p. 62.[3]

C.B. informed her mother that the police were outside, and Ms. Bolton came to the porch. *Id.* Ms. Bolton saw Officer Clarite placing the juvenile in a police vehicle. *Id.* Officer Clarite returned to question Ms. Bolton and asked for her name. *Id.* at p. 79. She inquired what was going on and why he needed her name. *Id.* at pp. 79-80. Ms. Bolton contends that Officer Clarite did not tell her why the juvenile was being arrested. *Id.* According to his Narrative, Officer Clarite advised Ms. Bolton that he had arrested the juvenile for larceny. Narrative of Officer Clarite [63-3], Ex. C to Pls.' Mot. [63] to Strike Aff. of Officer Clarite. Officer Clarite continued to ask Ms. Bolton to provide her name. She refused to do so. Dep. of Lekesha Bolton [68-1] at pp. 79-80. C.B. admits that she heard an officer ask her mother to give him her name, and that her mother responded, "I'm not fixing to give you my name because I don't know what's going on . . . ." Dep. of C.B. [68-2] at p. 24. C.B. also refused to give Officer Clarite her name, and claims that she refused to do so because he was "cussing" and being disrespectful, and would not tell them what was going on, even though he was on their property. *Id.* at pp. 35-36. She admits that she raised her voice to the officer and repeatedly asked him why he was yelling. *Id.* at p. 40.

A man named Chris Ray entered Plaintiffs' yard, and according to Ms. Bolton, Officer Clarite went directly to him and did not question him before

---

[3] Ms. Bolton submits that she remembers the time because C.B. rode the bus home from school and was at home at the time Officer Clarite arrived. Dep. of Lekesha Bolton [68-1] at p. 62.

"slamm[ing] him to the ground" and handcuffing him. Dep. of Lekesha Bolton [68-1] at p. 84. Officer Clarite escorted Mr. Ray towards his police vehicle, questioned him, and then released him and told him to leave. *Id.* at p. 86. Officer Clarite then returned to the porch to question Ms. Bolton. *Id.* She and her boyfriend, Raphael Gill, argued with Officer Clarite. *Id.* at 91. Mr. Gill also refused to provide his name to Officer Clarite. *Id.* Ms. Bolton contends that Officer Clarite was angry and stated, "Some MF'r is going to jail . . . ." *Id.* at p. 86; Aff. of Lekesha Bolton [64] at p. 2.

During this verbal confrontation, Mr. Gill attempted to leave on his bicycle. Dep. of Lekesha Bolton [68-1] at p. 91. Ms. Bolton contends that Officer Clarite grabbed Mr. Gill around the neck and arrested him. *Id.* Officer Clarite avers that he arrested Mr. Gill after he ignored his directive not to leave, and after he warned Mr. Gill that failing to assist in the investigation constituted a crime. Aff. of Mark Clarite [40-6] at p. 4; Narrative of Officer Clarite [63-3]. Ms. Bolton acknowledges that upon Mr. Gill's arrest, she became angry and continued arguing with Officer Clarite. Dep. of Lekesha Bolton [68-1] at pp. 92, 94-95. By this time, additional officers had arrived on the scene. According to Ms. Bolton, "about one hundred people" from the neighborhood were watching the incident, yelling at the police officers and becoming "hostile." *Id.* at pp. 95, 98, 102. Ms. Bolton maintains that her cousin, Kelly, was handcuffed for "going off" on the officers, and that as a result, she [Ms. Bolton] yelled at the officers, who told her to "shut up." *Id.* at pp. 103-05.

Ms. Bolton testified in her deposition that she and Officer Clarite continued

to "have words," and he told her that he was "taking [her] MF'ing ass to jail too . . . ." *Id.* at p. 92. She responded by telling him, "I ain't going to jail[.] I ain't did nothing or whatever." *Id.* She asserts that Officer Clarite then went to talk to the other officers. *Id.* at p. 103. Ms. Bolton testified that she was upset and crying, so she went inside and locked the front door. *Id.* at pp. 104-05, 122-23. Officer Clarite disputes Ms. Bolton's version of events. He contends that he told Ms. Bolton that she was under arrest and moved towards her to effect the arrest, when she said, "F---k this, you ain't arresting me," and went inside the house. Aff. of Mark Clarite [40-6] at p. 5. According to Officer Clarite, he instructed Ms. Bolton to stop, but she refused and slammed the front door on his leg as he tried to follow her inside. *Id.* In both her deposition and Affidavit, Ms. Bolton attests that she was not told that she was under arrest before she entered her home. Dep. of Lekesha Bolton [40-11] at p. 185, Ex. H to Defs.' Mot. [40] for Qualified Immunity and to Dismiss; Aff. of Lekesha Bolton [64] at p. 2.

As soon as Ms. Bolton closed the door, Officer Clarite kicked it open. Aff. of Mark Clarite [40-6] at p. 5. He, along with Officers W.J. Riddle and J. Wuest entered the home. Ms. Bolton recalls the officers shouting, "Police, police, get on the floor . . . ." Dep. of Lekesha Bolton [68-1] at pp. 105, 122. Ms. Bolton blocked the door to keep it from hitting her in the face. *Id.* at pp. 122-23. Officer Clarite took her to the ground by performing a leg sweep. *Id.* at pp. 122-26. Ms. Bolton testified in her deposition that Officer Clarite put his "leg between [her] leg," and she instantaneously fell to the ground, tearing a ligament in her right knee. *Id.* at pp.

123-26; Pls.' Compl. [2] at pp. 7-8.  While she was on the floor, Ms. Bolton saw her

son Anthony Bolton being handcuffed on the floor beside her with a police officer

pointing a gun to his head.  Dep. of Lekesha Bolton [68-1] at p. 120.  She saw her

daughter C.B. in the adjoining room handcuffed and on the floor.  Dep. of Lekesha

Bolton [68-1] at pp. 130-34.  She maintains that C.B. was having a seizure, and that

she later learned that C.B. had been tazed.  *Id.* at pp. 131, 134-36.

Officer Riddle, who tased C.B., entered the residence to assist Officer Clarite,

after he heard an altercation occurring at the threshold of the home.  Aff. of W.J.

Riddle [40-7] at pp. 3-5, Ex. G to Defs.' Mot. [40] to Assert Qualified Immunity and

to Dismiss; Dep. of William Riddle [68-4] at pp. 5, 14-15.  He observed Ms. Bolton

and her son Anthony struggling with Officer Clarite on the floor.  Dep. of William

Riddle [68-4] at p. 5.  He then saw C.B. attempt to punch Officer Clarite in the back

of the head.  *Id.* at p. 16.  Officer Riddle maintains that he tazed C.B. to prevent her

from striking Officer Clarite, but, according to Officer Clarite, she succeeded in

hitting him in the back of the head before becoming immobilized by the taser and

falling to the ground.  *Id.* at pp. 16-17; Aff. of Mark Clarite [40-6] at p. 7.

A camera mounted to Officer Riddle's taser digitally videotaped a partial

view of the events occurring after Officer Riddle pulled his taser and entered the

residence.  Taser Video, Ex. 2 [43] to Ex. G [40-7] to Defs' Mot. [40] to Assert

Qualified Immunity and to Dismiss.  The video shows Ms. Bolton pulling away and

struggling with Officer Clarite before she is taken to the ground.  *Id.*  It also shows

her son Anthony assisting in her resistance and holding her arm, as Officer Clarite

holds her other arm behind her back and takes her to the ground. *Id.* Anthony falls

to the ground on top of his mother and is restrained by an officer. *Id.*

C.B. enters the camera's view as her mother and brother are on the ground.

*Id.* She moves behind Officer Clarite and raises her right arm to strike him from

behind. *Id.* At the point that she completes her swing, it is apparent that she has

been tazed because she screams and falls to the ground, and the wires from the

taser's darts are visible. *Id.*[4] Officer Wuest reaches C.B., draws back his right arm,

and, construing the evidence in the light most favorable to C.B., possibly punches

C.B. on the right side of her face as she is lying on her back. *Id.* He then rolls her

over and handcuffs her. *Id.* Anthony Bolton testified that C.B. was hit by an officer

after she was tased. He claimed that he witnessed an officer "beat on" his sister

and hit her "a couple of times" after she was tased. Dep. of Anthony Bolton [68-3]at

pp. 116-17.

B.    Procedural History

On June 29, 2010, Plaintiffs filed their Complaint against Defendants the

City of Gulfport, Gulfport Police Department, and Officers Clarite, Riddle, and

Wuest, in their individual capacities. Pls.' Compl. [1]. Plaintiffs allege that

Defendants violated their Fourth Amendment rights by seizing them without

---

[4]C.B. testified in her deposition that she does not remember whether she hit
or attempted to hit a police officer during the incident. Dep. of C.B. [40-12] at p. 43.
The taser video clearly shows, however, that she did attempt to punch Officer
Clarite from behind. Taser Video [43]. According to Officer Clarite, she was
successful and hit him in the back of the head. Aff. of Mark Clarite [40-6] at p. 7.
Contact cannot be seen on the taser video, however, because of the angle of the
camera. Taser Video [43].

probable cause and by using excessive force.  *Id.* at pp. 5-10.  Plaintiffs also assert

state law claims for assault and battery and intentional infliction of emotional

distress.  *Id.* at pp. 11-13.

On December 16, 2011, Officers Clarite, Riddle, and Wuest filed a Motion

[40] to Assert Qualified Immunity and to Dismiss Pursuant to Fed. R. Civ. P. 56 or

Other Grounds.  The parties acknowledge that Defendants' Motion [40] is, in

substance, a motion for summary judgment, and both parties have submitted

numerous exhibits outside the pleadings for the Court's consideration.  Pls.' Resp.

[62] to Defendants' Mot. for Qualified Immunity and to Dismiss; Defs.' Mot. [79] to

Strike Pls.' Untimely Exhibits.

By Text Order, the Court granted Plaintiffs until February 27, 2012, to

respond to Defendants' Motion [40] for Qualified Immunity and to Dismiss.[5]  On

February 24, 2012, Plaintiffs filed their Response [62], as well as a Motion to Strike

[63] an affidavit submitted by Officer Clarite, which Defendants filed in support of

their Motion [40] for Qualified Immunity and to Dismiss.  Two days after the

response deadline, Plaintiffs submitted excerpts from the depositions of Ms. Bolton,

C.B., Anthony Bolton, and Officer Riddle, in support of their Response.

---

[5] Defendants initially produced frame-by-frame photographs of the first six
seconds of the taser video, but they did not produce the nearly three minute video
itself until compelled to do so by Chief Magistrate Judge John Roper.  Order [56].
Defendants maintained that their production of the taser photographs was
equivalent to producing the taser video itself.  Defs.' Resp. [54] to Pls.' Mot. [46] to
Compel at pp. 5-6; Defs.' Mot. [79] to Strike Pls.' Untimely Exhibits at pp. 2-3.  The
frame by frame photographs produced do not depict as much of the incident as does
the taser video itself.  Taser Digital Images Nos. 1, 2, 3 [40-7][40-8][40-9]; Taser
Video [43].

Attachments [68]. Four days after the response deadline, Plaintiffs submitted video of a local television station's coverage of the arrests, which includes interviews of a Gulfport Police Department sergeant and an alleged eyewitness, as well as video footage of what appears to be a muddy footprint on the door of Plaintiffs' residence. Video Filed Conventionally [70]. Defendants have filed a Motion [79] to Strike the untimely exhibits and video. Defendants have also filed a Motion [80] to Strike an affidavit of Lakesha Bolton submitted in support of Plaintiffs' Response to Defendants' Motion for Qualified Immunity and to Dismiss.

On February 27, 2012, Plaintiffs filed a Motion [67] to Amend their Complaint, requesting leave to add claims asserting that Officer Clarite arrested Ms. Bolton in retaliation for her exercising her First Amendment rights, and that Defendants entered Plaintiffs' residence "without a search or arrest warrant, without consent from the Plaintiffs, and without any probable cause, reasonable grounds, or exigent circumstances that would justify [them] illegally entering Plaintiffs' home." Pls.' Proposed Am. Compl. [67-1], Ex. 1 to Pls' Mot. [67] to Am. Compl. Defendants oppose Plaintiffs' Motion to Amend, and have filed a Motion requesting that the Court deny the Motion to Amend, or stay or abate the briefing on the Motion to Amend until final adjudication of Defendants' Motion [40] for Qualified Immunity and to Dismiss. Motion [76] to Stay and/or Abate Briefing on Plaintiffs' Motion to Amend Complaint Pending Adjudication of the Pending Motion for Summary Judgment and/or for Other Relief.

## II. DISCUSSION

### A. Plaintiffs' Motion to Strike or Limit the Affidavit of Officer Clarite

Plaintiffs have filed a Motion [63] to Strike or Limit the Affidavit of Officer Clarite, which Defendants submitted in support of their Motion [40] for Qualified Immunity and to Dismiss. Plaintiffs first argue that the Affidavit should be stricken because they were unable to depose Officer Clarite. Mot. [63] to Strike Aff. of Officer Clarite at p. 1. Plaintiffs noticed his deposition for October 14, 2011, but he did not appear. *Id.* Plaintiffs object to Officer Clarite "not appearing for his deposition and filing a nine (9) page conclusionary, self serving Affidavit." *Id.*

Defendants have submitted with their Response [74], a letter dated October 3, 2011, from Defendants' counsel to Plaintiffs' counsel, which advises Plaintiffs' counsel that Officer Clarite is no longer employed by the Gulfport Police Department, now resides in Texas, and is unable to attend the deposition that Plaintiffs scheduled for October 14, 2011. Letter [74-1], Ex. A to Defs.' Resp. [74] to Pls.' Mot. to Strike Aff. of Officer Clarite. Defendants' counsel has also submitted a letter written November 30, 2011, by Plaintiffs' counsel to him, wherein Plaintiffs' counsel advises him of dates on which he is available for the depositions of Officers Clarite and Wuest. Letter [74-4], Ex. D to Defs.' Resp. [74] to Pls.' Mot. to Strike Aff. of Officer Clarite. Defendants' counsel's response to this letter, also dated November 30, 2011, advises Plaintiffs' counsel that Officer Clarite is available to be deposed by telephone on December 21, 2011, one of the dates on which Plaintiffs' counsel indicated that he was available. Letter [74-3], Ex. C to Defs.' Resp. [74] to

Pls.' Mot. to Strike Aff. of Officer Clarite. Why the telephone deposition of Officer Clarite did not occur has not been explained, and the Court is not persuaded that Officer Clarite's Affidavit should be stricken because Plaintiffs did not depose him.

Plaintiffs next argue that Officer Clarite's Affidavit should be stricken or limited because it is conclusory, self-serving, and contradicts the version of events captured in the Narratives he completed following the incident. Mot. [63] to Strike Aff. of Officer Clarite at pp. 1-3. Plaintiffs do not identify which portions of the nine-page Affidavit they contend are conclusory, self-serving, or contradictory, nor do they offer any authority supporting why Officer Clarite's Affidavit should be stricken on these bases. Plaintiffs simply make a nonspecific argument that the Affidavit is objectionable and should be stricken or limited. Such a general, non-particularized argument is not persuasive. Plaintiffs' Motion [63] to Strike the Affidavit of Officer Clarite will be denied.

B.    Defendants' Motion to Strike Plaintiffs' Untimely Exhibits Submitted in Support of Their Response to Defendants' Motion for Qualified Immunity and to Dismiss

Defendants have filed a Motion [79] to Strike the exhibits that Plaintiffs submitted after their Response [62] to Defendants' Motion for Qualified Immunity and to Dismiss was filed. These exhibits consist of excerpts from the depositions of Ms. Bolton, C.B., Anthony Bolton, and Officer Riddle, which Plaintiffs submitted two days after their response deadline, as well as video news footage from a local television station's coverage of the arrests, which Plaintiffs submitted four days after their response deadline. Attachments [68]; Video Filed Conventionally [70]. Defendants do not claim prejudice from Plaintiffs' delay in submitting these

exhibits, but argue solely that the attachments should be stricken because "the[y] were clearly in existence when the Motion for Summary Judgment was filed on December 16, 2011." Mot. [79] to Strike Pls.' Untimely Exhibits at p. 4.

Defendants' counsel attended and participated in the depositions of Ms. Bolton, C.B., Anthony Bolton, and Officer Riddle, and was aware of the testimony given by these witnesses. The Court finds no undue prejudice or harm to Defendants in the Court's consideration of these deposition excerpts. The Court will deny the Defendants' Motion [79] to Strike, to the extent that it requests that these deposition excerpts be stricken. To the extent that Defendants' Motion requests that the Court strike the video footage from a local news station's coverage of the arrests, the Motion is moot. The video footage, even if considered, would not create a genuine issue of material fact or alter the Court's analysis in resolving Defendants' Motion for Qualified Immunity and to Dismiss.

C.    Defendants' Motion to Strike the Affidavit of Lakesha Bolton

Defendants have also filed a Motion [80] to Strike the Affidavit of Lakesha Bolton, which Plaintiffs submitted in support of their Response to Defendants' Motion for Qualified Immunity and to Dismiss. Mot. [80] to Strike Aff. of Lakesha Bolton. Defendants argue that Ms. Bolton's Affidavit is "primarily aimed at theories of liability that do not appear in the Complaint and have only now been improperly raised (in the midst of a pending summary judgment motion)." *Id.* at p. 4. Defendants do not specify which portions of Ms. Bolton's two page Affidavit form the basis of their objection, or explain how the Affidavit raises new theories of

liability.  They maintain that Ms. Bolton's Affidavit is "conclusory or non-factually

supported," but offer no examples to support this position.  *Id.* at p. 7.  Defendants

have not demonstrated that Ms. Bolton's Affidavit should be stricken or limited,

and their Motion [80] to Strike will be denied.

D.     Plaintiffs' Motion to Amend Their Complaint

On February 27, 2012, Plaintiffs filed a Motion to Amend.  Pls.' Mot. [67] to

Am. Compl.  The Motion was filed approximately twenty months after their initial

Complaint, and over two months after Defendants filed their Motion [40] for

Qualified Immunity and to Dismiss.  Plaintiffs request leave to assert a First

Amendment claim, namely, that Officer Clarite arrested Ms. Bolton in retaliation

for her exercising her First Amendment rights, and to assert that Defendants

violated Plaintiffs' Fourth Amendment rights by entering Plaintiffs' residence

"without a search or arrest warrant, without consent from the Plaintiffs, and

without any probable cause, reasonable grounds, or exigent circumstances that

would justify [them] illegally entering Plaintiffs' home."  Pls.' Proposed Am. Compl.

[67-1], Ex. 1 to Pls.' Mot. to Am. Compl. [67].

Defendants oppose Plaintiffs' Motion and have filed a Motion [76] entitled,

"Preliminary Response to Plaintiffs' Motion to Amend Complaint, or Alternatively,

Motion to Stay and/or Abate Briefing on Plaintiffs' Motion to Amend Complaint

Pending Adjudication of the Pending Motion for Summary Judgment and/or for

Other Relief."  Defendants [76] point out that Plaintiffs have provided no

explanation as to why they should be permitted to amend their Complaint at this

stage in the proceedings. *Id.* at pp. 3-4. Defendants argue that they would be prejudiced by the delay and expanding allegations, and would be required to re-depose witnesses. *Id.* at p. 5. Plaintiffs have filed neither a Reply in support of their Motion [67] to Amend, nor a Response to Defendants' Motion [76] "to Stay and/or Abate Briefing on Plaintiff's Motion to Amend Complaint Pending Adjudication of the Pending Motion for Summary Judgment."

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings and provides that, after a responsive pleading has been served, a party may amend a pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rule states that "[t]he court should freely give leave when justice so requires." *Id.* The Fifth Circuit has recognized that Rule 15(a) "evinces a bias in favor of granting leave to amend." *Dussouy v. Gulf Coast Inv. Corp.,* 660 F.2d 594, 597 (5th Cir. 1981).

In deciding whether to grant a motion for leave to amend, the district court may consider a variety of factors including undue delay, bad faith and dilatory motive, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment. *Id.* "[I]f the delay in filing a motion for leave to amend is particularly egregious, the burden shifts to the moving party to demonstrate that the delay was due to oversight, inadvertence or excusable neglect." *Little v. Liquid Air Corp.,* 952 F.2d 841, 846 (5th Cir. 1992). The Court should "more carefully scrutinize a party's attempt to raise new theories of recovery by amendment when the opposing party has filed a

motion for summary judgment." *Parish v. Frazier,* 195 F.3d 761, 764 (5th Cir. 1999).

The parties agreed to conduct discovery limited to the issue of qualified immunity, and the Court set a deadline for Defendants to file a motion based on qualified immunity, which was later extended to December 16, 2011. The depositions of Ms. Bolton, C.B., Anthony Bolton, and Officer Riddle were taken during September, October, and November 2011. On December 16, 2011, Officer Clarite and Riddle executed Affidavits. On this same date, Defendants filed their Motion [40] for Qualified Immunity and to Dismiss. Plaintiffs did not file their Motion [67] to Amend their Complaint until February 27, 2012. Plaintiffs' Motion to Amend offers no explanation for the delay in seeking an amendment, but simply states that Plaintiffs "have realized that they have additional claims arising from the incident made basis for this lawsuit[,] and they wish to amend their Complaint to reflect same." Pls.' Mot. to Am. Compl. [67] at p. 1.

Because Plaintiffs did not file a Reply in support of their Motion [67] to Amend, or a Response to Defendants' Motion [76] "to Stay and/or Abate Briefing on Plaintiff's Motion to Amend Complaint Pending Adjudication of the Pending Motion for Summary Judgment," they have not rebutted Defendants' contention that they will be prejudiced by the delay and required to re-depose witnesses. Plaintiffs have made no attempt to justify their delay. For the foregoing reasons, Plaintiffs' Motion [67] to Amend should be denied, even under Rule 15(a)(3)'s liberal standard in favor of granting leave to amend. The Court notes, however, that for the reasons

discussed later herein, amending the Complaint would also be futile. Plaintiffs'

Motion [67] to Amend will be denied, and Defendants' Motion [76] entitled,

"Preliminary Response to Plaintiffs' Motion to Amend Complaint, or Alternatively,

Motion to Stay and/or Abate Briefing on Plaintiffs' Motion to Amend Complaint

Pending Adjudication of the Pending Motion for Summary Judgment and/or for

Other Relief," will be denied as moot.

E.    Defendants' Motion for Qualified Immunity and to Dismiss

    1.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is

appropriate "[i]f the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." FED. R.

CIV. P. 56(a). The purpose of summary judgment is to isolate and dispose of

factually unsupported claims or defenses. *Melton v. Teachers Ins. & Annuity Ass'n*

*of America,* 114 F.3d 557, 560 (5th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477

U.S. 317, 324 (1986)).

To rebut a properly supported motion for summary judgment, the opposing

party must show, with "significant probative evidence," that there exists a genuine

issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir.

2000). In deciding whether summary judgment is appropriate, the Court views

facts and inferences in the light most favorable to the nonmoving party. *RSR Corp.*

*v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). However, if the evidence is

merely colorable, or is not significantly probative, summary judgment is

appropriate.  *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co,* 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment."  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

"There is no material fact issue unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *RSR Corp.*, 612 F.3d at 858.  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law.  An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."  *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248).  "The court has no duty to search the record for material fact issues."  *RSR Corp.*, 612 F.3d at 858.  "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."  *Id.*

2.    Plaintiffs' Federal Claims

a.    *Heck v. Humphrey,* 512 U.S. 477 (1994), Bars Ms. Bolton's § 1983 Claims

In *Heck v. Humphrey,* the Supreme Court held that § 1983 claims must be dismissed if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence," unless the plaintiff can prove that the conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or

called into question by a federal court's issuance of a writ of habeas corpus."  512

U.S. 477, 486-87 (1994).  "The *Heck* analysis . . . does not make an inquiry to the

validity of the plaintiff's claims, but, rather, considers whether they are inconsistent

with a prior criminal conviction."  *Jenkins v. Town of Vardaman, Miss.,* No.

3:10CV75-MPM-SAA, 2012 WL 5194046, * 5 (N.D. Miss. Oct. 22, 2012).  "The policy

undergirding [*Heck*] is based on 'the hoary principle that civil tort actions are not

appropriate vehicles for challenging the validity of outstanding criminal

judgments.'" *Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006)(citing *Heck,* 512

U.S. at 486).  "This principle is another manifestation of the doctrine of issue

preclusion or collateral estoppel, *i.e.*, the policy of finality that prevents the

collateral attack of a criminal conviction once the matter has been litigated."  *Id.*

Ms. Bolton was convicted of resisting lawful arrest, in violation of MISS. CODE

ANN. § 97-9-73, and attempting to intimidate, impede, obstruct, or resist a city

officer in the discharge of his duties, in violation of GULFPORT, MISS., CODE OF

ORDINANCES § 7-7.  Judgments [40-2].  Her convictions have not been reversed,

expunged, or otherwise called into question.  The determination of whether her

§ 1983 claims are barred by *Heck* requires an analysis of whether success on those

claims "requires negation of an element of the criminal offense or proof of a fact that

is inherently inconsistent with one underlying the criminal conviction."  *Bush v.

Strain,* 513 F.3d 492, 497 (5th Cir. 2008).

Mississippi law requires proof of the existence of a lawful arrest to sustain a

conviction for resisting arrest under § 97-9-73.  MISS. CODE ANN. § 97-9-73 ("It shall

be unlawful for any person to obstruct or resist by force, or violence, or threats, or in

any other manner, *his lawful arrest* or the lawful arrest of another person . . .

.")(emphasis added); *see Taylor v. State,* 396 So. 2d 39, 42 (Miss. 1981)("The offense

of resisting arrest presupposes a lawful arrest.").  In order to prevail on a Fourth

Amendment claim that she was unlawfully seized because there was no probable

cause or warrant and because she "had done nothing wrong or illegal," Pls.' Resp.

[62] at p. 9, Ms. Bolton would need to "negate an element of the offense for which

[she] was charged," namely that she was lawfully arrested, *Heck,* 512 U.S. at 487

n.6 (plaintiff convicted of resisting arrest cannot seek damages for violation of his

Fourth Amendment right to be free from unreasonable seizures).

Similarly, in order to prevail on a First Amendment retaliation claim, Ms.

Bolton would have to establish that she was arrested because she questioned the

authority of the Gulfport Police Department, and not because she resisted arrest or

attempted to intimidate, impede, obstruct, or resist a city officer in the discharge of

his duties.  *Jenkins,* 2012 WL 5194046 at * 8 (establishing that plaintiff was

arrested in retaliation for exercising his First Amendment rights would negate

element of lawful arrest).  Thus, *Heck* precludes Ms. Bolton from collaterally

attacking the lawfulness of her arrest in this civil suit for damages.  The

appropriate forum for challenging the criminal charges against her was in the

underlying criminal proceeding, and Ms. Bolton's appeal of her convictions was

dismissed. Those convictions are final and cannot be challenged here.

As for Ms. Bolton's excessive force claim, several decisions by the Fifth Circuit indicate that *Heck's* favorable termination rule generally bars excessive force claims where the plaintiff has been convicted of resisting arrest. *Daigre v. City of Waveland, Miss.,* No. 1:10-cv-00568-LG-RHW, *20 (S.D. Miss. Sept. 24, 2012)(collecting cases). The Fifth Circuit has concluded that there are limited circumstances where a plaintiff's prior conviction for resisting arrest is not inconsistent with a claim that a police officer used an unreasonable amount of force. *Id.; see Bush v. Strain,* 513 F.3d 492, 500 (5th Cir. 2008); *Ballard v. Burton*, 444 F.3d 391, 401 (5th Cir. 2006); *Arnold v. Town of Slaughter, La.,* No. 03-30941, 100 Fed. App'x 321, 323 (5th Cir. 2004). The *Heck* analysis for excessive force claims "recognizes that a broad application of *Heck* in the context of resisting arrest convictions could have the dangerous effect of implying that once a person begins to resist arrest, the police may use any amount of force on her and avoid civil consequences." *Daigre,* No. 1:10-cv-00568-LG-RHW at *20.

The determination of whether an excessive force claim is barred "is analytical and fact-intensive . . . ." *Bush,* 513 F.3d at 497. "[A] § 1983 claim would not necessarily imply the invalidity of a resisting arrest conviction, and therefore would not be barred by *Heck,* if the factual basis for the conviction is temporally and conceptually distinct from the excessive force claim." *Id.* at 498. "Accordingly, a claim that excessive force occurred after the arrestee has ceased his or her

resistance would not necessarily imply the invalidity of a conviction for the earlier resistance." *Id.*

Ms. Bolton does not admit that she resisted arrest. She is not claiming that Officer Clarite used excessive force upon her after she stopped resisting, or that he used an unreasonable amount of force to subdue her resistance. Instead, she is alleging that she did nothing wrong and that Officer Clarite had no justification to use any force against her. Pls.' Compl. [2] at p. 7; Pls.' Resp. [62] at p. 9 ("Officer Clarite had no right to arrest Ms. Bolton. . . . The officers had no probable cause to arrest her because [Ms.] Bolton had done nothing wrong or illegal."). Ms. Bolton's convictions establish that she resisted arrest, and the taser video confirms that she actively pulled away from Officer Clarite when he attempted to restrain her. Ms. Bolton's resistance and Officer Clarite's use of force occurred simultaneously, in a span of about five seconds. Ms. Bolton's resistance is therefore not temporally distinct from her excessive force claim. *Bush,* 513 F.3d at 499. It is also not conceptually separable. A successful claim based on a finding that Ms. Bolton "truly did nothing wrong at the scene of the arrest . . . would necessarily imply the invalidity of [her] conviction for resisting arrest pursuant to Mississippi Code Section 97-9-73 . . . ." *Easterling v. Logazina,* 3:08-cv-523-DPJ-FKB, 2011 WL 213472, *1 (S.D. Miss. Jan. 21, 2011); *see Arnold,* 100 F. App'x at 324 (applying *Heck* where plaintiff convicted of resisting arrest claimed he did nothing wrong and nothing to provoke the force used). Ms. Bolton's "excessive force claim is inseparable from, and would therefore undermine, [her] conviction for resisting

arrest. As such, [her excessive force] claim is barred by *Heck*." *Easterling,* 2011 WL

213472 at *1. Because all of Ms. Bolton's § 1983 claims are barred by *Heck,* they

will be dismissed with prejudice.

> b.    Plaintiffs' Claims and the Qualified Immunity Analysis

When a plaintiff names a police officer in his individual capacity, the plaintiff

is seeking "to impose personal liability upon [the officer] for actions he takes under

color of state law." *Kentucky v. Graham,* 473 U.S. 159, 165 (1985).[6] The defense of

qualified immunity is available to an official sued in his individual capacity. *Id.* at

166-67. Qualified immunity shields a governmental official from civil liability for

damages based upon the performance of discretionary functions if the official's acts

did not violate clearly established constitutional or statutory law of which a

reasonable person would have known. *Easter v. Powell,* 467 F.3d 459, 462 (5th Cir.

2006). "A qualified immunity defense alters the usual summary judgment burden

of proof." *Brown,* 623 F.3d at 253. "Once an official pleads the defense, the burden

then shifts to the plaintiff, who must rebut the defense by establishing a genuine

fact issue as to whether the official's allegedly wrongful conduct violated clearly

established law." *Id.* "The plaintiff bears the burden of negating qualified

immunity, but all inferences are drawn in his favor." *Id.*

The qualified immunity analysis involves a two prong inquiry: (1) whether

---

[6]When a plaintiff names an official in his official capacity, it is the equivalent
of naming the government itself as the defendant, and requires the plaintiff to
prove an official policy or custom as the cause of the constitutional violation.
*Graham,* 473 U.S. at 165.

the plaintiff has alleged a violation of a constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson* v. *Callahan*, 555 U.S 223, 232 (2009). It is within the discretion of the district court to decide which of the two prongs of the qualified immunity analysis to address first. *Id.* at 236. Determining qualified immunity is "a question of law for the court, not a matter of fact for the jury." *Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir. 2010). Whether an official may be "held personally liable for an allegedly unlawful action generally turns on the objective legal reasonableness of the action, assessed in light of the of the legal rules that were clearly established at the time it was taken." *Messerschmidt v. Millender,* 132 S. Ct. 1235, 1245 (2012)(internal citations omitted). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Graham v. Connor,* 490 U.S. 386, 396-97 (1989). The reasonableness inquiry is objective and does not take into account a police officer's underlying intent or motivation. *Id.* at 397. The Court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "An official's actions must be judged in light of the circumstances that confronted him, without the benefit of hindsight." *Brown,* 623 F.3d at 253.

"Regardless of the theory of liability that a plaintiff is pursuing, in order to state a viable substantive due process claim[,] the plaintiff must demonstrate that the state official acted with culpability beyond mere negligence." *McClendon v. City of Columbia, Miss.,* 305 F.3d 314, 325 (5th Cir. 2002). "[A] plaintiff must allege conduct which 'shocks the conscience.'" *Murray v. Earle*, No. 06-50568, 2008 WL 1744257, *5 (5th Cir. 2008)(quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998)). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who violate the law.'" *Mangieri v. Clifton,* 29 F.3d 1012, 1017 (5th Cir. 1994)(quoting *Hunter v. Bryant,* 502 U.S. 224, 229 (1991)). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Brown,* 623 F.3d at 253.

(i.)     Ms. Bolton's § 1983 Claims and Qualified Immunity

While Ms. Bolton's § 1983 claims are wholly barred by *Heck,* her excessive force claim should also be dismissed because Officer Clarite is entitled to qualified immunity. The right to make an arrest necessarily carries with it the right to use some degree of force or threat to effect it. *Graham,* 490 U.S. at 396. Ms. Bolton's convictions prevent her from successfully arguing that Officer Clarite did not have the right to arrest her. In effectuating her arrest, Officer Clarite was entitled to "exert such physical force as [was] necessary to effect the arrest by overcoming the resistance he encounter[ed]." *Wallace v. Harber,* No. 91-7309, 988 F.2d 1213, 1993

WL 82379, *3 (5th Cir. 1993). As shown by the taser video, Ms. Bolton was actively struggling against Officer Clarite before he employed a leg sweep to take her to the ground. Even assuming that Ms. Bolton incurred a permanent injury to her knee from the takedown, as she alleges, Officer Clarite's use of a leg sweep to effect her arrest was not objectively unreasonable, given the circumstances leading up to the use of force. *See Raymond v. Dine,* No. 12-cv-02192, 2012 WL 4813520 (D. Md. Oct. 9, 2012)(officer's use of leg sweep was not objectively unreasonable where arrestee was loud, argumentative, and physically resisted arrest); *Wallace v. City of Shelby,* No. 96 CV 0481, 968 F. Supp. 1204 (N.D. Ohio 1997)(police officer who used leg sweep on a resisting, non-handcuffed suspect was entitled to qualified immunity). Officer Clarite is entitled to qualified immunity, and Ms. Bolton's excessive force claim against him is precluded for this reason as well.

In light of the Court's denial of Plaintiffs' Motion [67] to Amend their Complaint, the Court need not address Ms. Bolton's claim that Defendants violated her Fourth Amendment rights by entering her home without a warrant and without consent. However, were Ms. Bolton allowed to proceed with this claim, it would be futile, as Defendants would be entitled to qualified immunity. "Police officers may enter premises without a warrant when they are in hot pursuit of a fleeing suspect." *Kentucky v. King,* 131 S. Ct. 1849, 1856 (2011). Whether the facts actually establish a "hot pursuit" warrant exception is not the ultimate issue. *Messerschmidt,* 132 S. Ct. At 1249. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments." *Id.* (internal

citations omitted).

Ms. Bolton admits that she was angry, argumentative, and noncompliant towards Officer Clarite. Dep. of Lekesha Bolton [68-1] at pp. 92, 94-96, 98, 102-105. She acknowledges that the situation was intensifying as a hostile crowd formed around her home, and that she and members of the crowd antagonistically yelled at the police officers. *Id.* at pp. 95-96, 98, 102-04. She admits that Officer Clarite told her that he was "taking [her] MF"ing ass to jail too . . . .," and that she responded, "I ain't going to jail[.] I ain't did nothing or whatever." *Id.* at p. 92. Moments later, according to Ms. Bolton's version of events, she went inside her home and locked the door while Officer Clarite was having a discussion with other officers. At this point, Officer Clarite's determination that Ms. Bolton had committed a crime and was fleeing into her home to evade arrest, whether mistaken or not, was not "plainly incompetent." *Messerschmidt,* 132 S. Ct. At 1249. Accordingly, Defendants would be entitled to qualified immunity with respect to Ms. Bolton's claim that they violated her Fourth Amendment rights by entering her home without a warrant or consent.

### (ii.) C.B's § 1983 Claims and Qualified Immunity

Despite Plaintiffs' assertion that Officer Riddle shot C.B. with a taser "with no reasonable grounds and without probable cause," the taser video clearly shows C.B. attempting to strike Officer Clarite in the back of the head just before Officer Riddle tased her. Pls.' Compl. [2] at p. 5. It is Plaintiffs' burden to rebut Defendants' defense of qualified immunity; however, Plaintiffs' Response to

Defendants' Motion [40] for Qualified Immunity and to Dismiss does not address qualified immunity as it relates to C.B.'s claim that she was unlawfully tased. Accordingly, Plaintiffs have provided no authority to support a finding that Officer Riddle's single deployment of a taser in an attempt to prevent C.B. from striking Officer Clarite from behind, while he was on the ground struggling to restrain Ms. Bolton, was an objectively unreasonable use of force.

In evaluating whether an officer's actions are objectively reasonable, the Court considers whether the suspect poses an immediate threat to the safety of the officers or others. *Graham,* 490 U.S. at 396. C.B. posed an immediate threat to the safety of an officer, and Officer Riddle's use of a taser in response to her attempted, and ultimately successful, assault upon Officer Clarite was not objectively unreasonable. That C.B. was sixteen at the time and claims to be learning disabled does not change this analysis. There is no evidence that the officers were aware of C.B.'s alleged learning disability, nor is her exact age apparent in the taser video. What is obvious from the taser video, however, is that C.B. was a legitimate threat to Officer Clarite, despite her age. Officer Riddle's use of force was reasonably proportionate to the tense, uncertain, and rapidly evolving situation which C.B. escalated when she attempted to punch an officer from behind.

On the other hand, the Court cannot conclude that Officer Wuest is entitled to qualified immunity as to C.B.'s excessive force claim. The taser video shows C.B. subdued on her back on the floor after she has been tased, when Officer Wuest draws back his right arm, and, construing the evidence in the light most favorable

to C.B., possibly strikes her on the right side of her face.  It is clearly established that police officers may not use gratuitous force upon a suspect who has already been subdued.  *Harris v. City of Circleville,* 583 F.3d 356, 367 (6th Cir. 2009)("there undoubtedly is a clearly established legal norm precluding the use of violent physical force against a suspect who has already been subdued and does not present a danger to himself or others"); *Lytle v. Bexar Co., Tex.,* 560 F.3d 404, 413 (5th Cir. 2009)("an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased"); *Phelps v. Coy,* 286 F.3d 295, 302 (6th Cir. 2002)("there was simply no governmental interest in continuing to beat [the plaintiff] after he had been nuetralized . . . .").  C.B.'s allegation against Officer Wuest, if true, asserts a violation of a clearly established constitutional right of which a reasonable person would have been aware.  This creates a genuine issue of material fact as to whether Officer Wuest used excessive force against C.B. after she was tased.  Because the Court cannot resolve disputes of material fact at this stage, summary judgment would not be appropriate on C.B.'s excessive force claim against Officer Wuest.

C.B.'s claim that Defendants violated her Fourth Amendment rights by entering her home without a warrant or consent will not go forward, in light of the Court's denial of Plaintiffs' Motion [67] to Amend their Complaint.  This claim would nevertheless be precluded for the same reasons as Ms. Bolton's identical claim.  Defendants' decision to enter the residence to apprehend Ms. Bolton was not "plainly incompetent."  Neither was the decision to tase C.B. and apprehend her.

C.B.'s excessive force claim against Officer Riddle, as well as her claim that she was seized unlawfully and without probable cause, will be dismissed. C.B.'s only § 1983 claim that survives qualified immunity is her excessive force claim against Officer Wuest.

3.    Plaintiffs' § 1983 Claims Against Municipal Defendants and Plaintiffs' State Law Claims

Defendants' Motion [40] for Qualified Immunity and to Dismiss does not address either Plaintiffs' state law claims for assault and battery and intentional infliction of emotional distress, or their § 1983 claims against Municipal Defendants. These claims will therefore proceed.

## III.  CONCLUSION

Based upon the foregoing, Ms. Bolton's 28 U.S.C. § 1983 claims against the individual Defendants will be dismissed. These claims are barred by *Heck v. Humphrey,* 512 U.S. 477 (1994), and the individual Defendants are further immune from these claims based upon qualified immunity. Plaintiff C.B.'s § 1983 claim that Defendants seized her unlawfully and without probable cause will be dismissed. C.B.'s § 1983 excessive force claim against Officer Riddle arising from her tasing will also be dismissed. C.B.'s remaining § 1983 claim, alleging excessive force by Officer Wuest following her tasing, will proceed. Defendants' Motion [40] for Qualified Immunity and to Dismiss should be denied in this respect. Defendants' Motion [40] does not address Plaintiffs' state law claims for assault and battery and intentional infliction of emotional distress. It also does not address

Plaintiffs' claims against Municipal Defendants. Accordingly, in addition to C.B.'s excessive force claim against Officer Wuest, Plaintiffs' state law claims, and their claims against Municipal Defendants, will proceed. Officer Clarite and Officer Riddle will be dismissed as Defendants.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [63] to Strike or Limit the Affidavit of Officer Clarite, filed by Plaintiffs Lekesha Bolton and C.B., is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Motion [79] to Strike Plaintiffs' Untimely Exhibits submitted in support of Plaintiffs' Response to Defendants' Motion for Qualified Immunity and to Dismiss, filed by Defendant officers of the Gulfport Police Department, Anthony Clarite, W.J. Riddle, and J. Wuest, is **DENIED**, in part on the merits, and in part as moot.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Motion [80] to Strike the Affidavit of Lekesha Bolton, filed by Defendant officers of the Gulfport Police Department, Anthony Clarite, W.J. Riddle, and J. Wuest, is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Motion [67], filed by Plaintiffs Lekesha Bolton and C.B., to Amend their Complaint, is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Motion [76] entitled, "Preliminary Response to Plaintiff's Motion to Amend Complaint, or Alternatively, Motion to Stay and/or Abate Briefing on Plaintiff's Motion to Amend Complaint Pending Adjudication of the Pending Motion for Summary Judgment and/or for Other Relief," filed by Defendant officers of the Gulfport Police

Department, Anthony Clarite, W.J. Riddle, and J. Wuest, is **DENIED AS MOOT**.

      **IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Motion [40] for Qualified Immunity and to Dismiss Pursuant to FED. R. CIV. P. 56 or Other Grounds, filed by officers of the Gulfport Police Department, Anthony Clarite, W.J. Riddle, and J. Wuest ("Defendants"), is **GRANTED IN PART AND DENIED IN PART.** All 28 U.S.C. § 1983 claims, alleged by Plaintiff Lekesha Bolton, against the individual Defendants are dismissed with prejudice. Plaintiff C.B.'s § 1983 claim, alleging that Defendants seized her unlawfully and without probable cause, is dismissed with prejudice. C.B.'s § 1983 excessive force claim against Officer Riddle arising from her tasing is dismissed with prejudice. The following claims will proceed: (1) Plaintiff C.B.'s § 1983 claim, alleging that Officer Wuest used excessive force upon her after she was tased; (2) Plaintiff Lekesha Bolton's and Plaintiff C.B.'s § 1983 claims against Municipal Defendants, namely the City of Gulfport, the Gulfport Police Department, and Chief of Police Allen Weatherford, in his official capacity; and (3) Plaintiff Lekesha Bolton's and Plaintiff C.B.'s state law claims for assault and battery and intentional infliction of emotional distress. Officer Anthony Clarite and Officer W.J. Riddle are dismissed as Defendants.

      **SO ORDERED AND ADJUDGED**, this the 7th day of December, 2012.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE